# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

     Plaintiff

v.

SHAWN F. HACKMAN,

     Defendant

Case No.: 2:21-cv-01234-APG-EJY

**Order Granting Application to Enforce
SEC Order**

[ECF No. 1]

     Shawn F. Hackman was disbarred from the Nevada bar in 2002.  Later that same year, the United States Securities and Exchange Commission (the SEC) issued an order suspending Hackman from appearing or practicing before it as an attorney (the 2002 Order).  The SEC subsequently determined that Hackman violated the 2002 Order.  It filed this action seeking an order compelling Hackman to comply with its 2002 Order and to disgorge, with prejudgment interest, the compensation he received from violating the 2002 Order.  Hackman argues that he did not violate the 2002 Order because he did not practice as an attorney and the SEC's proposed disgorgement amount includes income that was not derived as a result of his alleged violation.  I find that Hackman violated the 2002 Order by practicing as an attorney before the SEC and that the SEC's proposed disgorgement is a reasonable approximation of the profits he received as a result of the violation.  I therefore grant the SEC's application.

## I. BACKGROUND

     Hackman was admitted to the Nevada bar in 1996 and was disbarred in 2002. ECF Nos. 1-3 at 2; 1-7 at 7.  Based on this disbarment, the SEC entered an order on September 10, 2002 suspending Hackman from appearing or practicing before it as an attorney, under Rule 102(e)(2)

of the SEC's Rules of Practice, 17 C.F.R. § 201.102(e)(2). ECF No. 1-3 at 2-3.  Beginning in at least 2007, Hackman worked at the law firms Harold P. Gewerter, Esq. Ltd. (Gewerter Law) and EAD Law Group (EAD Law), which was owned and operated by Elizabeth Dowling, [1] (collectively, the Law Firms). ECF Nos. 1-5 at 32 (120:15)-33 (122:4); 1-7 at 11 (36:16-37:3). The SEC presented extensive evidence regarding Hackman's conduct at the Law Firms between 2016 and the present, which I will not repeat fully here.  Instead, I summarize the representative evidence most relevant to my conclusions: [2]

One EAD Law client, Anthony Iarocci, testified that he relied on Hackman for legal advice on SEC filings, Hackman provided advice on SEC filings, Hackman drafted filings, and Iarocci had no contact with Dowling while he relied on Hackman to prepare SEC filings. *See* ECF No. 1-16 at 16 (56:2-18), 18 (63:16-64:25), 19 (68:13-69:15), 22 (78:24-79:6), 26 (96:24-97:14), 29 (107:1-108:14), 33 (122:16-23), 36 (134:11-23).  Hackman advised Iarocci regarding statements and documents disclosed to the SEC. *See* ECF Nos. 1-18 (advising on timing and content of financial statements); 1-19 (advising regarding language used in Form 10 and SEC's prior approval of that language); 1-21 (advising requiring filing requirements); [3] 1-22 (same); [4] 1-23 (same); *see also* ECF No. 1 at 44 (Appendix B, list of SEC forms).  Hackman also drafted and edited SEC filings for Iarocci's companies. *See* ECF Nos. 1-24 (Hackman providing comments

---

[1] The SEC states and Hackman does not dispute that Dowling owns and operates EAD Law.

[2] The SEC's application detailed examples of Hackman's work which, they argue, is representative of all of his work.  Hackman does not dispute that these examples are representative of the entirety of his work.

[3] Dowling testified that she did not recall discussing any of these questions with Hackman. ECF No. 1-9 at 72 (586:17-25)-73 (587:1-16).

[4] Dowling testified that she had no reason to believe Hackman did or did not consult with her prior to responding. ECF No. 1-9 at 73 (588:17-589:8).

on financial statements and Form 10); 1-25 (drafting Form 10's); 1-26 (circulating Form 10 drafts "with our updates[,] inserts[,] and responses.")

A different client, Tracy Smith, testified that Hackman filed a form ID for one of Smith's companies. ECF No. 1-35 at 67 (261:19)-68 (262:8). Hackman sent Smith an S-1 registration statement and a document titled "Final Legal Opinion" which had Dowling's electronic signature on it. ECF Nos. 1-8 at 41 (523:9-19); 1-37; *see also* ECF No. 1-8 at 16 (422:7-22) (Hackman invoking his Fifth Amendment rights when asked whether it is more likely than not that Dowling never reviewed opinion letters issued under her electronic signature). Hackman invoked his Fifth Amendment rights when asked whether he functioned as SEC counsel on this S-1, whether Dowling reviewed this opinion letter, and whether Dowling authorized him to sign her name on this letter. ECF No. 1-8 at 41 (523:9-25)-42 (524:1-3). Dowling testified that she did not recall doing work on this S-1 and that she believed that if Hackman had worked on this S-1 without her review or involvement, then this would violate his disbarment. ECF No. 1-9 at 53 (509:21-510:19). Hackman later provided additional advice regarding the S-1 and prepared revisions to the S-1, an exhibit to the S-1, and an SEC comment response letter. *See* ECF Nos. 1-39; 1-40; 1-41;[5] 1-42;[6] 1-43; 1-44; 1-45; *see also* 1-8 at 31 (482:16-483:3) (Hackman's computer shows author as EAD Law Group). Hackman invoked his Fifth Amendment rights when he was asked whether he functioned as SEC counsel on the S-1s filed by Smith's company, and as counsel on

[5] There are indications that even when a draft filing or SEC-related legal advice came from Dowling or Gewerter's email address, Hackman often completed the work or provided the advice. Such indications include emails being sent from a Sprint mobile phone (*See* ECF Nos. 1-5 at 56 (Dowling uses Verizon); 1-6 at 11 (Gewerter uses Sprint); 1-7 at 5 (Hackman used Sprint during the relevant period)) and the informal language or typos used in the emails (ECF No. 1-5 at 54 (208:10-209:7)).

[6] Emails being sent from and simultaneously copied to the same email address also indicate that even when a draft filing or SEC-related legal advice came from Dowling or Gewerter's email address, Hackman often completed the work or provided the advice. ECF No. 1-8 at 17 (426:8-12).

the Form D filed by another of Smith's companies. ECF No. 1-8 at 42 (525:1-11) and 43 (528:11-24).

Hackman's work for clients also included:

- Providing drafts of S-1s and recommendations for language used in and revisions to S-1 filings. *See* ECF Nos. 1-63; 1-67; 1-68; 1-86; 1-87.

- Providing final drafts of S-1 attorney opinion letters. *See* ECF Nos. 1-64; 1-65; 1-66; 1-71; 1-72; *see also* ECF Nos. 1-7 at 23 (84:1-19) (identifying Hackman's computer name for purposes of metadata); 1-8 at 11 (400-401) (Hackman invoking the Fifth Amendment when asked whether Dowling would review S-1 opinion letters, whether Hackman attached her name without her review, and whether he regularly submitted opinion letters without Dowling's review), 54-55 (573:18-576:8) (Hackman invoking his Fifth Amendment rights when asked whether he functioned as SEC counsel on specific S-1 and all of specific client's SEC filings, whether he believes Dowling reviewed the S-1 before it went to the client or was filed with the SEC, and whether Dowling authorized him to put her signature on this opinion).

- Preparing a draft of an 8-K document to be filed with the SEC. ECF No. 1-69.

- Providing a draft of a 10-K document to be filed with the SEC. ECF No. 1-99.

- Generally acting as an attorney for clients' SEC filings. *See* ECF Nos. 1-8 at 9-11 (Hackman invoking his Fifth Amendment rights when asked whether he worked as an attorney for all of the clients listed in two exhibits (ECF Nos. 1-107 and 1-108) and as an attorney on the clients' SEC filings, and whether Dowling or Gewerter supervised his work on any SEC filing for any of the clients listed), 22 (445:24-446:17) (Hackman invoking Fifth Amendment when asked whether he more likely than not functioned as an

attorney when a Gewerter Law client made an SEC filing in 2015 and 2016, whether he

functioned as the attorney on the vast majority of SEC filings made by Gewerter Law

clients in 2015-2016, and whether he functioned as counsel on the vast majority of SEC

filings by EAD Law clients between 2016 and the present); 1-107; 1-108.

Hackman also directly communicated with SEC staff on behalf of a client.  Joseph

McCann, an attorney in the SEC's Division of Corporation Finance, testified that he reviewed a

Form 10 registration statement and related filings filed by AS Capital, Inc. ECF No. 1-147 at 2.

McCann testified that in June 2019, he participated in a phone call with individuals who he

understood to be counsel to AS Capital and Xue Ran Gao, an individual who was purchasing a

controlling interest in AS Capital. *Id.* at 2-3.  He testified that counsel to AS Capital worked at

EAD Law, was male, and was referred to as "Shawn" on the phone call. *Id.*  On the call, Gao's

counsel indicated Shawn was responsible for the Schedule 14-F filing which would result in

Gao's purchase. *Id.* at 3.  McCann testified that Hackman stated the filing would be amended to

clarify certain facts and explain the contingencies to the purchase closing, and represented that

AS Capital would file an amended Schedule 14-F to provide greater disclosure regarding the

purchase. *Id.*  Hackman invoked his Fifth Amendment rights when asked whether he was on this

phone call and whether he believed this call violated his disbarment or the 2002 Order. ECF No.

1-8 at 49 (552:4-553:10).

With regard to Hackman's supervision at the Law Firms, Hackman estimated that

Dowling worked 20 hours per week while he worked over 50 hours per week. ECF No. 1-7 at 35

(133:4-13).  He invoked his Fifth Amendment rights when asked whether Dowling supervised

his work on SEC filings for certain clients. ECF No. 1-8 at 11 (400:14-17; 403:15-17) and 25

1  (459:16-21).  He also invoked his Fifth Amendment rights when asked whether Gewerter and

2  Dowling supervised his work on SEC filings. *Id.* at 22 (444:18-445:23).

## 3  II. VIOLATION OF 2002 ORDER

4        Section 21(e)(1) of the Exchange Act authorizes me to issues writs of mandamus,

5  injunctions, and orders commanding any person to comply with the Act and orders issued

6  thereunder. 15 U.S.C. § 78u(e) ("Upon application of the Commission the district courts of the

7  United States . . .  shall have jurisdiction to issue writs of mandamus, injunctions, and orders

8  commanding (1) any person to comply with the provisions of this chapter [or with] . . . the rules

9  of a national securities exchange or registered securities association of which such person is a

10  member or person associated with a member . . . ."). "Section 21(e) of the Exchange Act

11  expressly permits the [SEC] to seek enforcement of its orders by making application to the

12  district court." *SEC v. McCarthy*, 322 F.3d 650, 655 (9th Cir. 2003) (citing 15 U.S.C. § 78u(e)).

13  I may enforce SEC orders that have been issued under the Exchange Act or the rules and

14  regulations promulgated under it. *Id.*  Because Rule 102(e) of the SEC's Rules of Practice was

15  promulgated under the Exchange Act, § 21(e) authorizes me to issue an order commanding

16  Hackman's compliance with the SEC's 2002 Order prohibiting him from practicing as an

17  attorney before the SEC. *See SEC v. Moore*, Case No.: 2:15-cv-1865-LDG-(GWF), 2017 WL

18  1404318, at *9 (D. Nev. Apr. 18, 2017).

19        Practicing before the SEC includes "[t]ransacting any business with the [SEC] and . . .

20  prepar[ing] . . . any statement, opinion or other paper by any attorney . . . or other professional or

21  expert, filed with the [SEC] in any registration statement, notification, application, report or

22  other document with the consent of such attorney . . . or other professional or expert." 17 C.F.R.

23  § 201.102.  Preparing statements or papers that are filed with the SEC constitutes practicing

before the SEC. *See SEC v. Hooper*, 769 Fed. Appx. 457, 458 (9th Cir. 2019) (finding district court did not err when it concluded defendant practiced as an accountant before the SEC because he prepared financial statements for companies that were included in documents those companies filed with the SEC). In Nevada, what constitutes practicing law "must be determined on a case-by-case basis, bearing in mind the overarching principle that the practice of law is involved when the activity requires the exercise of judgment in applying general legal knowledge to a client's specific problem." *In re Discipline of Lerner*, 197 P.3d 1067, 1069 (Nev. 2008). Serving as a client's sole contact at a firm, advising a client about their legal rights, and recommending future actions to clients have been found to constitute practicing law. *Id.* at 1241-42; *see also In re Discipline of Crowley*, Nos. 64457, 68200, 2016 WL 2742371 at *1 (Nev. May 9, 2016) (finding suspended former attorney practiced law by meeting with client to review trust document and writing conclusion letter based on that review).

The SEC argues that Hackman transacted business with the SEC by communicating with SEC staff on behalf of clients at least twice, willingly preparing numerous documents he knew would be filed with the SEC, and consenting to those filings. The SEC argues Hackman practiced law as defined by Nevada law because he relied on the professional judgment he formed while a licensed attorney to advise clients about their legal obligations with regard to SEC filings, including the form, substance, and legal requirements. The SEC notes that clients specifically hired Hackman to function as their attorney, and that while Hackman's signature or name was not on any opinion or SEC filing, he performed the substantive legal work on these filings. The SEC also argues that Hackman's work, not his title, determines whether he practiced law. It contends that Gewerter and Dowling maintained no control or authority over Hackman's work product, and had minimal involvement in most filings. The SEC contends that even if

1   Hackman worked under the Law Firms' rules, Hackman does not explain how the Law Firms'

2   rules comported with the requirements of the 2002 Order or with the Nevada Rules of

3   Professional Conduct.  The SEC also argues that Hackman agreed to undertake representations

4   and served as clients' primary point of contact for legal issues and filings.

5          Hackman does not deny that he completed any of the actions that the SEC alleges he did.

6   Instead, construing his response liberally, Hackman disputes only that his actions constitute

7   practicing law. *See* ECF No. 6 at 2, ¶¶ 1-4 (Dowling was sole attorney at EAD Law; Hackman

8   worked as a paralegal under the Law Firms' rules and supervision; clients were corrected when

9   they referred to him as an attorney, though some continued to do so; business cards stated he was

10  legal assistant or JD).  Hackman presents no evidence in support of these arguments.  He also

11  argues that I may not draw inferences from his invoking his Fifth Amendment rights because

12  after he attempted to cease the SEC's depositions entirely by invoking his Fifth Amendment

13  rights, counsel for the SEC told him he could not make a blanket assertion of these rights but he

14  could assert his right to specific questions during the deposition.  Hackman presents no authority

15  for this position and I am not aware of any.  Hackman was free to invoke his Fifth Amendment

16  rights and I may draw adverse inferences from his failure of proof. *SEC v. Colello*, 139 F.3d 674,

17  677 (9th Cir. 1998).

18         Regardless of what job title Hackman maintained while at the Law Firms, he practiced

19  law under Nevada law by, for example, providing drafts of SEC filings to clients, advising

20  clients on the substance of their SEC filings, recommending actions to clients regarding their

21  SEC filings, and communicating to the SEC that a client would provide a forthcoming SEC

22  filing. *See In re Discipline of Lerner*, 197 P.3d at 1074 (citing Florida Supreme Court case

23  holding that a paralegal practiced law by, among other things, discussing legal strategy with

8

1  clients).  With regard to Hackman's argument that he was supervised at the Law Firms, he

2  provides no evidence or showing of what this supervision consisted of, or why any such

3  supervision would prevent my finding that he practiced law.  Instead, Hackman invoked his Fifth

4  Amendment rights when asked whether Gewerter and Dowling supervised his work on SEC

5  filings and whether he worked as an attorney for dozens of specific clients. *E.g.*, ECF No. 1-8 at

6  9-11, 22.  Hackman's lack of proof on these questions and the SEC's extensive evidence

7  regarding his communication with and work on behalf of clients while at the Law Firms

8  demonstrate that Hackman practiced law.

9  Hackman also practiced before the SEC in violation of the 2002 Order.  For example, he

10  prepared many documents for filing with the SEC on behalf of clients. *See, e.g.*, ECF Nos. 1-63;

11  1-64; 1-65; 1-66; 1-67; 1-68; 1-69; 1-71; 1-72; 1-86; 1-87; 1-99.  On multiple occasions,

12  Hackman invoked his Fifth Amendment rights when asked whether he functioned as SEC

13  counsel for certain SEC filings. ECF No. 1-8 at 41-43.  His lack of proof on this question and the

14  numerous examples of Hackman preparing filings for the SEC on behalf of clients (which

15  Hackman does not dispute) demonstrate that Hackman practiced before the SEC as an attorney in

16  violation of the 2002 Order prohibiting him from doing so.

17  **III. DISGORGEMENT**

18  "[A]ctions for disgorgement of improper profits are equitable in nature" in the context of

19  an SEC enforcement action and "[d]isgorgement plays a central role in the enforcement of the

20  securities laws." *SEC v. Rind*, 991 F.2d 1486, 1491, 1493 (9th Cir. 1993).  I have "broad equity

21  powers to order the disgorgement of ill-gotten gains obtained through the violation of the

22  securities laws." *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998) (quotation

23  omitted); *see also Liu v. SEC*, 140 S. Ct. 1936, 1942 (2020) (concluding equity authorizes courts

1    to strip wrongdoers of their ill-gotten gains).  I may order disgorgement as an equitable remedy

2    for the violation of a Rule 102(e) suspension. *See, e.g., SEC v. Jones*, 155 F. Supp. 3d 1180,

3    1185-86 (D. Utah 2015).

4         The SEC bears the ultimate burden of persuading me that its disgorgement amount

5    reasonably approximates the amount of unjust enrichment. *SEC v. Platforms Wireless Int'l*

6    *Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010).  Once the SEC establishes a reasonable

7    approximation of the defendant's profits, the burden shifts to the defendant to demonstrate the

8    disgorgement figure was not a reasonable approximation. *Id.*  Though this results in the risk that

9    the disgorgement measure ends up typically being actual profits, this risk of uncertainty should

10    fall upon the defendant whose illegal conduct created the uncertainty. *Id.*

11         The SEC estimates Hackman was paid $817,438 for work that violated its 2002 Order,

12    and it argues this amount is not just reasonable, but conservative.  Based on checks Gewerter

13    wrote to Hackman, the SEC estimates Gewerter paid Hackman approximately $478,884 in 2016-

14    2017 and that 75% of this income was for securities work related to SEC filings.[7] *See* ECF Nos.

15    1-4 at 14 (¶150); 1-7 at 56 (215:25-216:20); 1-151 at 2-9.  The SEC therefore estimates

16    Hackman's total disgorgeable income from Gewerter is $359,162.

17         Based on checks and electronic payments Dowling made to Hackman, the SEC estimates

18    Dowling paid Hackman approximately $48,622 in 2016, $110,765 in 2017, $215,300 in 2018,

19    $207,739 in 2019, $82,385 in 2020, and $5,650 in 2021. *See* ECF Nos. 1-4 at 14 (¶ 150); 1-151

20

21    [7] Hackman testified that 75% of his work in 2015 and 2016 for Gewerter was securities-related
work. ECF No. 1-7 at 56 (215:25-216:20).  The SEC applied this 75% figure to his work for

22    Gewerter in 2017 as well, and performed the same extrapolation for the percentage of work
attributable to securities work at EAD Law for years that Hackman did not provide an estimate.

23    The SEC also extrapolated the lowest figure Hackman provided for his securities-related work in
a single year (45%) to the income he received directly from clients.  The SEC argues these
extrapolations are reasonable and Hackman does not dispute that this is reasonable.

at 10-32; 1-153; 1-154; 1-155.  Based on Hackman's testimony, the SEC estimated that 45% of Hackman's income from EAD Law in 2016, 2017, 2018, 2020, and 2021, and 50% of his income in 2019, was for work that violated the 2002 Order. ECF No. 1-7 at 55 (213:1-25)-56 (214:1-24). The SEC therefore estimates Hackman's total disgorgeable income from Dowling is $312,092.

Based on other evidence of direct payments, the SEC estimates clients paid Hackman $146,184 directly for work that violated the 2002 Order. *See* ECF No. 1-4 at 14-15 (¶¶ 151-52). The SEC calculated prejudgment interest on the total amount as $148,712.

Hackman argues that the SEC's estimation likely includes some things that do not constitute practice before the SEC.[8]  He also contends that he will need time to pay any disgorgement ordered.

The SEC's $817,438 figure is based on records of payments and Hackman's own testimony.  It reasonably approximates work done in violation of the 2002 Order.  Hackman has not demonstrated that this figure is unreasonable because he presents no evidence or argument regarding which portion of it constitutes work not in violation of the 2002 Order.

I THEREFORE ORDER Shawn F. Hackman to comply with the United States Securities and Exchange Commission's 2002 Order suspending Hackman from appearing or practicing before the SEC as an attorney.

I FURTHER ORDER Hackman to pay total disgorgement of $817,438, representing net profits gained as a result of work he performed in violation of the 2002 Order, together with prejudgment interest in the amount of $148,712, for a total of $966,150, within **30 days** of entry of this order.

---

[8] Hackman does not challenge the reasonableness of the SEC's treatment of his business expenses as *de minimis*.  I find the SEC's approximation of Hackman's profits to be reasonable, including its treatment of business expenses, so I do not address Hackman's *de minimis* business expenses.

11

Hackman may transmit payments electronically to the Commission, which will provide detailed ACH/Fedwire instructions upon request. Payment may also be made directly from a bank account via pay.gov through https://pay.gov/public/form/start/39621196. Hackman may also pay by certified check, bank check, or United States postal money order payable to the Securities and Exchange Commission, which must be delivered to:

Enterprise Services Center
Accounts Receivable Branch
6500 South MacArthur Boulevard
HQ Bldg., Room 181, AMZ-341
Oklahoma, City, OK 73169

and must be accompanied by a letter identifying the case title, civil action number, and name of this Court; Hackman as the Respondent in this action; and specifying that payment is made pursuant to this order. Hackman must simultaneously transmit photocopies of evidence of payment and case-identifying information to the SEC's counsel in this action. By making this payment, Hackman relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Hackman. The SEC will hold the funds (collectively, the Fund) until further order of this court.

I FURTHER ORDER that post-judgment interest will accrue on any amounts owed pursuant to 28 U.S.C. § 1961.

I FURTHER ORDER the Clerk of Court to enter judgment accordingly.

DATED this 28th day of April, 2022.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE